**Bobby Earl AUSTIN, Petitioner,**

v.

**Thomas R. ISRAEL, Respondent.**

No. 80–C–1061.

United States District Court,
E. D. Wisconsin.

June 3, 1981.

Bobby E. Austin, pro se.

Bronson C. LaFollette, Wis. Atty. Gen. by E. Gordon Young, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

Bobby Earl Austin has filed a petition for a writ of habeas corpus in which he attacks his state convictions for first degree murder, attempted murder and armed robbery. Relying on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), Mr. Austin contends that these convictions are unconstitutional because the trial court improperly instructed the jury on the element of intent by stating that the law presumes that one intends the natural consequences of his deliberate acts.

The respondent argues that Mr. Austin may not collaterally attack his convictions in this proceeding because he failed to object to the reading of the instruction at trial and also because he has not exhausted available state court remedies. On the merits, the state maintains that *Sandstrom* does not mandate a new trial under the circumstances of this case.

## I. BACKGROUND

In an opinion affirming Mr. Austin's convictions, the Wisconsin supreme court gave the following account of the events leading to the petitioner's arrest and conviction:

"On July 25, 1975, the defendant smoked marijuana, injected heroin, and drank an undetermined amount of wine and beer. That afternoon he joined a dice game at a local tavern in Racine. Later in the afternoon, Kenny Simmons and Berlyn Funderburg joined the game, and Funderburg began winning consistently. After the defendant found that Funderburg had been playing with loaded dice, he demanded that Funderburg return the money he had lost in the dice game, but Funderburg refused.

"The defendant then went to the home of a friend, took a shotgun, and loaded it. He then returned to the site of the dice game. After demanding but not recovering money there, he traced down Funderburg. Funderburg approached defendant's car. The defendant got out of the car with the shotgun pointed down, and told Funderburg to return the money lost in the dice game. Funderburg took money out of his pocket, and the defendant took it. The defendant then noticed Kenny Simmons, turned and said either 'You next Kenny boy' or something to the effect 'I'm going to blow you away.' In turning towards Simmons, the defendant either pointed the shotgun upwards or directly at Simmons, and the shotgun discharged. The blast only slightly injured Simmons but killed Willie Wortham, a friend of the defendant's who happened to be standing near Simmons at the time. Later that night the defendant turned himself in to the police." *Austin v. State*, 86 Wis.2d 213, 216–17, 271 N.W.2d 668 (1978).

At the petitioner's trial, eight witnesses who were present at the shooting testified as to the circumstances surrounding the incident. Only one of these witnesses testified that Mr. Austin stated before firing the weapon, "I'm going to blow you away." Two witnesses testified that the petitioner did not say anything like that; these witnesses stated that they heard Mr. Austin say "you next Kenny boy," or words to that effect. In addition, four witnesses testified that they saw the gun rise in the air as the petitioner turned towards Kenny Simmons and that the gun discharged immediately, while still pointed in the air, without the petitioner having aimed it.

The petitioner testified that, after he obtained money from Mr. Funderburg, he noticed Kenny Simmons "sneaking away." Mr. Austin also stated that as he turned toward Mr. Simmons, he raised the gun into the air, and it discharged. The petitioner further testified that he then left the scene of the shooting and did not learn until later that the shotgun blast had struck two people, killing one and wounding another.

The doctor who performed the post-mortem examination on the body of Willie Wortham testified that the body contained approximately one hundred tiny wounds congested in the upper right side of the body, reaching from the lower portion of the chest to the lower portion of the ear. The doctor testified that the wounds were concentrated in the right side of the chest and the right arm. In addition, Kenny Simmons' doctor testified that Mr. Simmons received two small wounds in the left arm and one wound in the left hand.

Two firearms specialists also testified at the petitioner's trial. The state's witness testified that the weapon used by the petitioner fired accurately at a range of thirty to forty feet, using the same ammunition that was used when the shooting occurred. The state's expert also testified that, based on his attempts to reproduce the impact pattern as revealed by the shirt worn by Willie Wortham, the distance between the petitioner and the victims when the shot was fired was between thirty and fifty feet.

The defendant's firearms specialist testified that his tests indicated that the firing range at the time of the shooting was between sixty and eighty feet. Using ammunition of the same type but of a different brand than that fired by the petitioner, the witness found that at sixty feet the impact of the shot was approximately six inches low and to the right of the target. He further testified that, based on his tests, examination of the impact pattern, and the number of wounds sustained by the victims, he believed the center of the shotgun load passed just to the right and above the right shoulder of Willie Wortham. Both experts agreed that the load of ammunition fired by

the petitioner contained approximately 250 pellets.

The petitioner also called a psychiatrist who had examined him in a pretrial interview. This witness testified that, in his judgment, the petitioner did not possess the intent to kill at the time of the shooting.

After closing arguments, the trial judge instructed the jury on armed robbery, attempted first degree murder, first degree murder and three lesser included offenses of homicide. The instructions on attempted first degree murder and first degree murder included the following charge:

"When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon likely to kill, and the person thus assaulted dies therefrom, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended."

Sometime after they retired to deliberate, the jury requested that the judge re-read the instructions on attempted first degree murder and first degree murder. Over the defendant's objections that the jury should also be re-instructed on the lesser included offenses of homicide, and that the presumptive intent language quoted above is confusing, the trial judge re-read the requested instructions, including the challenged language regarding presumed intent. Shortly thereafter, the jury brought in their verdict.

## II. EXHAUSTION OF STATE REMEDIES AND CONTEMPORANEOUS OBJECTION RULE

After the state supreme court affirmed Mr. Austin's convictions on direct appeal, the petitioner filed a motion for post-conviction relief with the state trial court raising the same issue he raises here. Relying on *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1979), which sustained the challenged instruction over constitutional

attack, the trial court denied Mr. Austin's motion. The respondent argues that the petitioner must appeal the trial court's adverse ruling before proceeding in this court.

■ I have previously considered and rejected this contention because such an appeal would be futile. *See Ross v. Israel,* 503 F.Supp. 131, 133 (E.D.Wis.1980). Since the Wisconsin supreme court has concluded that the challenged instruction does not shift to the defendant the burden of proving lack of intent, no principle of comity or federalism would be served by requiring Mr. Austin to pursue any available state appellate remedy.

■ The respondent also contends that the petitioner's failure to object to the reading of the instruction at trial insulates Mr. Austin's convictions from constitutional attack in this proceeding. As I held in *Ross v. Israel, supra,* however, the fact that the state trial court reached the merits of Mr. Austin's post-conviction motion without relying on the state's contemporaneous objection rule means that "the claim may be presented here." *Id.* at 133. Moreover, the record demonstrates that the petitioner did object to the re-reading of the challenged instruction, but the trial court nevertheless re-read the instruction. Under these circumstances, I find that the interests served by the contemporaneous objection rule have been satisfied and that the rule presents no obstacle to my considering the merits of Mr. Austin's claim.

## III. THE MERITS OF THE PETITION

"The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. That determination requires careful attention to the words actually spoken to the jury, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom v. Montana, supra,* 442 U.S. at 514, 99 S.Ct. at 2454 (citations omitted).

■ The respondent argues that the challenged instruction merely describes a permissive inference, that is, it allowed but did not require the jury to draw conclusions about Mr. Austin's intent from evidence of his actions. The respondent also maintains that permissive inferences do not shift the burden of proof and therefore pass constitutional muster.

I do not believe that Mr. Israel's interpretation can be sustained. A reasonable juror surely could have concluded that he was required to apply the presumption if there were no circumstances to rebut it; in this respect, the jury was left without a choice. Most courts that have classified the same instruction challenged in this case, including the Wisconsin supreme court, have rejected the interpretation urged by the respondent. *See Muller v. Israel,* 510 F.Supp. 730 (E.D. Wis.1981) (Warren, J.); *Pigee v. Israel,* 503 F.Supp. 1170, 1174 (E.D.Wis.1980) (Evans, J.); *Muller v. State, supra,* 94 Wis.2d at 477, 289 N.W.2d 570; *Adams v. State,* 92 Wis.2d 875, 885–86, 289 N.W.2d 318 (Ct.App.1979). *But see Genova v. State,* 91 Wis.2d 595, 620, 283 N.W.2d 483 (Ct.App.1979). Mr. Austin's jury was not told that, regardless of the circumstances, they were free to accept or reject the presumption; accordingly, I decline to hold that the instruction merely describes a permissive inference.

I also decline to accept the petitioner's characterization of the instruction as describing a conclusive presumption, which, of course, is the opposite of a permissive inference because it constitutes "an irrebuttable direction [to the jury] to find intent once convinced of the facts triggering the presumption." *Sandstrom v. Montana, supra,* 442 U.S. at 517, 99 S.Ct. at 2456. In *Sandstrom* the instruction stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts;" this was held to describe a conclusive presumption. However, the instant instruction begins with the words "when there are no circumstances to prevent or rebut the presumption." Based on this introductory clause, I am satisfied that no reasonable juror could have interpreted the instruction

as creating an irrebuttable, conclusive presumption. *Accord, Adams v. State, supra,* 92 Wis.2d at 887, 289 N.W.2d 318. *Contra, Muller v. State, supra,* 94 Wis.2d at 486 n.8, 289 N.W.2d 570 (Abrahamson, J., dissenting).

In my opinion, the challenged instruction describes a rebuttable presumption. The critical issue is whether the rebuttable presumption created by the instruction merely shifted to the petitioner the burden of producing some evidence contrary to the presumption or whether the instruction shifted to the accused the entire burden of persuasion on the issue of intent. If a reasonable juror could have interpreted the instruction as requiring the petitioner to produce evidence of sufficient persuasive quality to disprove the presumption, then the instruction is unconstitutional. *Sandstrom v. Montana, supra,* 442 U.S. at 524, 99 S.Ct. at 2459. On the other hand, if the instruction only required the petitioner to introduce some evidence contrary to the presumption, then the convictions under attack must be upheld if a rational trier of fact could have found intent on the basis of the evidence produced at trial. *Ulster County Court v. Allen, supra,* 442 U.S. 140, 157–58 n.16, 163–65, 99 S.Ct. 2213, 2225 n.16, 2227–28, 60 L.Ed.2d 777.

The *Sandstrom* Court held that the instruction examined in that case, which is nearly identical to the second half of the instruction challenged here, described a rebuttable presumption which unconstitutionally shifted the burden of persuasion to the defendant. 442 U.S. at 524, 99 S.Ct. at 2459. Therefore, the resolution of the issue presented in this case depends upon the way in which a reasonable juror would have interpreted the prefatory phrase "when there are no circumstances to prevent or rebut the presumption." Does this language constitutionally distinguish the instant instruction from the instruction which was invalidated in *Sandstrom*?

The respondent maintains that the introductory phrase can only be interpreted to mean that the introduction of any evidence contrary to the presumption will rebut it.

Accordingly, the respondent continues, the instruction simply required the petitioner to produce some evidence that he did not intend to kill Kenny Simmons; once such evidence was produced, the respondent contends that no reasonable juror would have applied the presumption.

While that is a plausible interpretation of the instruction, I am persuaded that it is not the *only* reasonable interpretation. The respondent concedes that the language under examination imposes an evidentiary burden on the accused with regard to an essential element of the offense. Such an explicit shifting of the burden of proof must be closely scrutinized to ensure that the jury did not vote to convict because the petitioner failed to persuade them that he did not intend to kill. The fundamental problem with the respondent's interpretation is that neither it nor the language of the instruction excludes the possibility that the jury applied the instruction in an unconstitutional manner. The teaching of *Sandstrom* is that the mere possibility of an unconstitutional application of the presumption is sufficient to invalidate the instruction. 442 U.S. at 514–15, 99 S.Ct. at 2454–55.

Both precedent and logic convince me that a reasonable juror could have utilized the presumption to cast upon the defendant the heavy burden of proving lack of intent. Well before the Supreme Court's decision in *Sandstrom*, the federal courts of appeals disapproved of language similar to that contained in the instruction at bar. In *Mann v. United States*, 319 F.2d 404, 407 (5th Cir. 1963), *cert. denied,* 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), the following instruction was given at trial:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act

knowingly done or knowingly omitted by the accused."

Reversing the defendant's conviction, the court of appeals in *Mann* reasoned that: "If the charge had ended when the jury was told that a person is presumed to intend the natural consequences of his own acts, when considered in the light of the charge as a whole, there would have been no error. When the words, 'So unless the contrary appears from the evidence' were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results." *Id.* at 409.

The above instruction, which has come to be known as the "*Mann* instruction," has also been sharply criticized by several other federal courts of appeals. *See United States v. Garrett*, 574 F.2d 778, 780–81 (3d Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978); *United States v. Robinson*, 545 F.2d 301, 305–06 (2d Cir. 1976); *United States v. Diggs*, 527 F.2d 509, 513–15 (8th Cir. 1975) (dictum); *United States v. Woodring*, 464 F.2d 1248, 1251 (10th Cir. 1972); *Cohen v. United States*, 378 F.2d 751, 755 (9th Cir. 1967); *United States v. Barash*, 365 F.2d 395, 402–03 (2d Cir. 1966); *United States v. Denton*, 336 F.2d 785, 788 (6th Cir. 1964).

In *Cohen v. United States, supra,* the court of appeals for the ninth circuit called use of the *Mann* instruction "an invitation to reversal." Moreover, several courts in addition to the *Mann* court have reversed convictions where the trial court gave the infirm instruction. *See United States v. Schilleci*, 545 F.2d 519, 524–26 (5th Cir. 1977); *United States v. Driscoll*, 454 F.2d 792, 794–96 (5th Cir. 1972); *United States*

*v. Robinson, supra; South v. United States*, 412 F.2d 697 (5th Cir. 1969); *United States v. Barash, supra*. As the Supreme Court noted in *Sandstrom*, 442 U.S. at 514 n.3, 99 S.Ct. at 2454 n.3, two federal courts of appeals, in an effort to be rid of the problems created by the *Mann* instruction, have ordered their lower courts "to delete the instruction in future cases." *United States v. Garrett, supra; United States v. Chiantese*, 560 F.2d 1244, 1255 (5th Cir. 1977) (en banc).

In my opinion, the instruction challenged in the case at bar is even more susceptible to an unconstitutional interpretation than the *Mann* instruction. The Wisconsin instruction told the jury that "the law presumes" the essential element of intent from evidence of a person's deliberate acts, while the *Mann* instruction only told the jury that they "may draw the inference" of intent; the former phrase is mandatory and is identical to the language condemned in *Sandstrom*.

Moreover, the supposed savings clause in the Wisconsin instruction is more suggestive than the parallel language in the *Mann* charge; the phrase "when there are no circumstances to prevent or rebut the presumption" could have suggested to Mr. Austin's jury that there were in fact no such rebutting circumstances before them. This interpretation is consistent with the line of authority which holds that the jury should not be instructed on a presumption if evidence has been introduced contrary to the presumed fact because to do so constitutes a misleading and suggestive comment upon the evidence. *See People v. Hemmer*, 19 Cal.App.3d 1052, 97 Cal.Rptr. 516 (1971) (reversing conviction). *See generally Fringer v. Venema*, 26 Wis.2d 366, 374, 132 N.W.2d 565, 133 N.W.2d 809 (1965) (quoting 9 Wigmore, Evidence § 2491, at 289 (3d ed. 1940)); J. Thayer, Preliminary Treatise on Evidence 313–52 (1898); Ashford and Risinger, "Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview," 79 Yale L.J. 165, 195–98 (1969); Allen, "Structuring Jury Decisionmaking in Criminal Cases: A Unified Constitutional

Approach to Evidentiary Devices," 94 Harv. L.Rev. 321, 361–62 (1980); Lushing, "Faces Without Features: The Surface Validity of Criminal Inferences," 72 J. of Crim.L. & Criminology 82, 112–15 (1981).

In addition, the respondent's argument is unconvincing because it fails entirely to account for the impact upon a reasonable juror of the words "to prevent or rebut the presumption." Far from advising the jury that the introduction of any evidence contrary to the presumption will rebut it, the above phrase could reasonably have been interpreted to mean that the presumption must be disproved. The accepted, common definition of the term "rebut" is "to contradict or oppose by . . . countervailing proof." Webster's New Collegiate Dictionary at 956 (1979). A proposition is not generally deemed to be rebutted unless the contrary is shown to be more likely than not true. In my judgment, the term "rebut" could reasonably have created the impression in the minds of Mr. Austin's jury that intent could be presumed unless the petitioner proved that he lacked intent. The mere possibility that the jury applied the presumption in this manner, an application which is not precluded by express language in the instruction itself, is sufficient to invalidate the instruction and taint the convictions to which it related. *Sandstrom v. Montana, supra.*

I am satisfied that there is no valid basis for distinguishing the instruction challenged in the case at bar from the instruction found unconstitutional in *Sandstrom. Accord, Dreske v. Wisconsin Department of Social Services,* 483 F.Supp. 783, 788 (E.D. Wis.1980) (Reynolds, Ch. J.). The interpretation of the instruction urged by the respondent is not an unreasonable one. Based on the breadth of the instruction, the lack of any qualifying phrases to guide the jury and preclude an unconstitutional application, and the close similarity between the instruction at bar and the *Sandstrom* instruction, I find that reasonable jurors could easily have expected that it was the burden of the petitioner to persuade them that he did not intend to kill.

I am not persuaded that the mischief caused by the challenged instruction was corrected by the other instructions cited by the respondent. The respondent argues that an unconstitutional application of the challenged instruction was precluded by the judge's instructions that the defendant was presumed to be innocent, that the state had to prove his guilt beyond a reasonable doubt, and that the burden of proof beyond a reasonable doubt always remained upon the prosecution. However, as the Supreme Court noted in rejecting this argument in *Sandstrom,* these general instructions are

"... not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456 n.7.

The record also poses an additional, if minor, obstacle to my accepting the respondent's contention because the supposed curative instructions were not re-read to the jury when the judge repeated the defective instruction on presumed intent. As the court of appeals for this circuit has stated:

"Having uttered the incorrect instructions . . ., no additional instruction . . ., albeit correct, could neutralize the misstatement. . . . 'Instructions to the jury must be consistent and not misleading. The fact that one instruction is correct does not cure error in giving another inconsistent one.'" *United States v. McCorkle,* 511 F.2d 477, 481 (7th Cir. 1974) (quoting *Mann v. United States, supra,* 319 F.2d at 410).

## IV. HARMLESS ERROR AND RETRO-ACTIVE APPLICATION OF *SANDSTROM*

Even if the challenged instruction is deemed to be unconstitutional, the respondent urges that I deny Mr. Austin the relief he seeks on the alternative grounds (1) that the error in giving the instruction was harmless beyond a reasonable doubt or (2) that *Sandstrom* should not be applied retro-

actively. I decline to utilize either ground to save the tainted convictions. ·

In a previous case, I held that any error in giving the instruction challenged in this case was harmless beyond a reasonable doubt because the essential element of intent was not the disputed issue at trial. *Ross v. Israel, supra,* 503 F.Supp. at 133–34. However, if the defendant's intent was the major issue during the trial, application of the harmless error standard becomes far more problematic. *Compare United States v. Driscoll,* 454 F.2d 792, 796 (5th Cir. 1972) *and Henderson v. United States,* 425 F.2d 134 (5th Cir. 1970) *with Helms v. United States,* 340 F.2d 15 (5th Cir. 1964). On the other hand, it may be appropriate to find harmless error if there is strong evidence of intent, and the only evidence to the contrary is the defendant's own incredible assertions of lack of intent. *See, e. g., United States v. Bohlmann,* 625 F.2d 751, 753 (6th Cir. 1980) (per curiam).

■ In the case at bar, I need not undertake a searching examination of the evidence at trial to conclude that the error in giving the instruction was not harmless beyond a reasonable doubt. Not only was the issue of intent sharply disputed at trial, but, in addition, the error in giving the instruction on presumed intent was repeated by the judge's re-reading of the instruction, without also re-reading the instructions on burden of proof, the presumption of innocence and lesser included offenses. The *possibility* that the jury may have improperly shifted the burden of persuasion to the petitioner is demonstrably enhanced under these circumstances.

During his closing argument, the prosecuting attorney repeatedly asserted that "the critical issue here is intent at the time of the shooting." Tr. at 1061. *See also id.* at 1073, 1103. The prosecutor then made the following statement:

"Intent. You will be instructed that a man presumes the natural and probable consequences of his acts. What is the natural and probable consequences [sic] of shooting at a man with a shotgun? The natural and probable consequence is

the taking of the human life." Tr. at 1104.

Shorn of the prefatory phrase "when there are no circumstances to prevent or rebut the presumption," the prosecutor's statement of the instruction is virtually identical to the instruction struck down in *Sandstrom.* In light of the *Sandstrom* decision, this argument clearly misstated the law and was prejudicial to the accused. This prejudice was compounded, of course, by the court's reading of the infirm instruction, and the constitutional error thereby committed was not harmless beyond a reasonable doubt.

■ In my opinion, the holding in *Sandstrom* must be applied retroactively. In *Ivan v. City of New York,* 407 U.S. 203, 205, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659 (1972) (per curiam), the Supreme Court held that *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), a case relied upon in *Sandstrom,* was to be accorded retroactive application. The *Winship* requirement that the state prove its case beyond a reasonable doubt was meant "to overcome an aspect of a criminal trial that substantially impairs [its] truth-finding function. . . ." More recently, in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the Supreme Court held that the rule announced in *Mullaney. v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), another case relied upon extensively in *Sandstrom,* was to be applied retroactively. Holding that the burden-shifting procedural device struck down in *Mullaney* threatened the truth-finding function of a criminal trial, the Court in *Hankerson* held that factors such as prior reliance by state and federal authorities and the adverse impact on the administration of justice would not preclude retroactive application.

In my opinion, these authorities compel the retroactive application of the rule announced in *Sandstrom.* A mandatory presumption which can be interpreted by a reasonable juror to impose upon the defendant the burden of proving lack of intent runs afoul of the *Winship* and *Mullaney*

rules, which were applied retroactively, and clearly impairs the truth-finding function of a criminal trial. Under these circumstances, any adverse impact on the administration of justice, however burdensome, is legally irrelevant.

## V. CONCLUSION

For the foregoing reasons, I find that the challenged instruction on presumed intent denied the petitioner due process of law and that his convictions for attempted first degree murder and first degree murder are accordingly unconstitutional. However, the flawed instruction was not included in the trial court's instructions on armed robbery, and the instructions on each count of the indictment were sufficiently compartmentalized to permit the conclusion that the infirm instruction did not influence the jury's deliberations on the armed robbery count. I therefore find no basis for nullifying the jury's verdict and resulting judgment of conviction on this count of the indictment. Mr. Austin's petition for a writ of habeas corpus will be granted in part and denied in part, and the order partially granting the petition will be stayed to permit the state either to retry the petitioner or to take an appeal.

Therefore, IT IS ORDERED that the petition of Bobby Earl Austin for a writ of habeas corpus be and hereby is granted in part and denied in part.

IT IS ALSO ORDERED that the petition in this case be and hereby is granted insofar as the petitioner attacks his convictions for attempted first degree murder and first degree murder.

IT IS FURTHER ORDERED that the petition in this case be and hereby is denied insofar as the petitioner attacks his conviction for armed robbery.

IT IS FURTHER ORDERED that the above order partially granting the petition in this case be and hereby is stayed for a period of ninety days from this date to afford the state an opportunity to retry the petitioner. Alternatively, if an appeal is taken, the above order partially granting the petition shall be stayed pending appeal.

If a retrial of the defendant is actually commenced by the state of Wisconsin within the ninety day period, the execution of the writ shall be permanently stayed.