Willie Lee **DRINKWATER,** Petitioner,

v.

**John R. GAGNON and Attorney General of the State of Wisconsin, Respondents.**

**No. 80–C–996.**

United States District Court, E. D. Wisconsin.

Sept. 11, 1981.

18. Document No. 7, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).

Waring R. Fincke, Shellow & Shellow, Milwaukee, Wis., for petitioner.

Bronson C. LaFollette, Wis. Atty. Gen. by Mary V. Bowman, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

MYRON L. GORDON, Chief Judge.

In his petition for a writ of habeas corpus, Willie Lee Drinkwater challenges his convictions for armed robbery and attempted murder, party to a crime, on the grounds that the trial court improperly instructed the jury that it could presume the crucial element of intent from Mr. Drinkwater's acts. The Supreme Court found a similar instruction unconstitutional in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

The respondents raise several arguments to support the convictions, including the claim that *Sandstrom* does not mandate the granting of the writ under the circumstances of this case, that *Sandstrom* should not be applied retroactively, and that the petitioner failed to object to the instruction at the time of trial.

## I. BACKGROUND

Mr. Drinkwater's convictions were affirmed by the Wisconsin supreme court in *Drinkwater v. State*, 73 Wis.2d 674, 245 N.W.2d 664 (1976). The court gave the following account of the circumstances that led to Mr. Drinkwater's conviction:

"On April 27, 1973, Ronald Nienow, a Coca-Cola deliveryman, was checking the rear bay door of his truck while on his daily route. Nienow was approached by two men, identified as Willie Lee Drinkwater and Johnny Young, each carrying handguns. Young informed Nienow that it was a holdup and demanded that he turn over any money he had. Young was positioned directly at Nienow's left side with his gun pressed tight against Nienow's left chest. [Mr. Drinkwater] was about two feet behind Young and to his left, about three feet from Nienow. Nienow gave his wallet containing approximately $300 in cash and checks to Young who then demanded more money. Nienow told them he had given them all he had and Young stated, 'We know you've got more, and we want it.' Again, Nienow stated that he had no more money, whereupon [Mr. Drinkwater] stated twice, 'Shoot the son-of-a-bitch.' At the second statement of [Mr. Drinkwater], Young fired his gun into the left chest of Nienow, the bullet exiting at his lower right side. As the two men began to run off, [Mr. Drinkwater], having run about five feet, turned around and shot at Nienow while he was on his knees. This shot apparently missed.

"Both men were apprehended a short time later in a garage about two blocks from the scene and two guns were confiscated." *Id.*, at 676–77, 245 N.W.2d 664.

At trial, several eyewitnesses testified to the above events. The guns seized at the time of the arrest were excluded from evidence by the trial judge. Mr. Drinkwater

chose not to testify and presented no witnesses in his behalf. The jury found him guilty on both counts. The trial judge sentenced him to an indeterminate term of not more than twenty-five years for the crime of attempted murder, consecutive to a sentence Mr. Drinkwater was already serving at the time of the sentencing, and twenty-five years for the crime of armed robbery, consecutive to the sentence for attempted murder and the earlier sentence. Mr. Drinkwater's petition states that he is currently confined at the Fox Lake correctional institution.

## II. CONTEMPORANEOUS OBJECTION

█ The respondents contend that the petitioner's failure to object to the instruction regarding the presumption of intent at the time of trial constitutes a waiver of this argument and bars this petition. A similar contention was considered and rejected by Judge Terence Evans in *Pigee v. Israel*, 503 F.Supp. 1170, 1172 (E.D.Wis.1980) *(Pigee I); aff'd on reconsideration, Pigee v. Israel*, No. 80–C–704 (E.D.Wis., filed February 3, 1981) *(Pigee II); accord, Campbell v. Prast*, No. 80–C–1003 (E.D.Wis., filed June 26, 1981); *Austin v. Israel*, 516 F.Supp. 461, 464 (E.D. Wis.1981); *Ross v. Israel*, 503 F.Supp. 131, 133 (E.D.Wis.1980); *see Ulster County Court v. Allen*, 442 U.S. 140, 153, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979). I share Judge Evans' view, and I reject the respondents' argument.

## III. THE MERITS OF THE PETITION

The petitioner bases his argument on the following crucial language in the instructions read at trial.

"While this intent to kill must be found as a fact, before you can find the Defendant guilty of attempted first-degree murder, it must be found, if at all, from his or their respective acts, his or their respective words or remarks, if any, so bearing upon his or their respective intent. Where there are no facts or circumstances to prove or rebut this presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts. If one person or more assaults another with a dangerous weapon or dangerous weapons likely to kill, and there are no facts or circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended." Answer to petition, filed March 3, 1981, Exh. H, p. 6.

I have previously found the use of this language when instructing the jury to be unconstitutional. *Austin, supra; accord, Harris v. Israel*, 515 F.Supp. 568 (E.D.Wis., 1981) (Reynolds, C. J.); *Dreske v. Wisconsin Department of Health & Social Services*, 483 F.Supp. 783 (E.D.Wis.1980) (Reynolds, C.J.); *Adams v. State*, 92 Wis.2d 875, 289 N.W.2d 318 (Ct.App.1979), *reversed* 95 Wis.2d 529, 290 N.W.2d 872 (1980); *see Muller v. Israel*, 510 F.Supp. 730 (E.D.Wis.1981) (Warren, J.); *but see Pigee I, supra; Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1980). As I stated in *Austin* :

"I am satisfied that there is no valid basis for distinguishing the [presumption] instruction challenged in the case at bar from the instruction found unconstitutional in *Sandstrom*. The interpretation of the instruction urged by the respondent is not an unreasonable one. Based on the breadth of the instruction, the lack of any qualifying phrases to guide the jury and preclude an unconstitutional application, and the close similarity between the instruction at bar and the *Sandstrom* instruction, I find that reasonable jurors could easily have expected that it was the burden of the petitioner to persuade them that he did not intend to kill." *Id.*, at 467.

The respondents contend that even if the use of the above-quoted instruction is unconstitutional under *Sandstrom*, the petition at bar should be denied because: (1) *Sandstrom* should not be applied retroactively, and (2) the error in giving the instruction was harmless beyond a reasonable doubt. An additional issue is present; after the briefing schedule was completed in this case, the court of appeals for this circuit upheld the use of an Indiana jury instruction that bears a resemblance to the one found unconstitutional in *Austin*.

*Jacks v. Duckworth*, 651 F.2d 480 (7th Cir. 1981).

■ The issue of retroactivity was considered in *Austin* ; I determined that *Sandstrom* must be applied retroactively. *Austin, supra,* at 468; *accord, Harris, supra,* at 571–572. Accordingly, I reject the respondents' first ground. In addition, I believe that I need not address the issue of the continued vitality of *Austin* in light of the *Jacks* decision, for I am persuaded that under the circumstances of this case the use of the instruction was harmless error.

■ Use of the presumption instruction is harmless error if the question of intent was not an issue at trial. *Ross, supra,* 503 F.Supp. 131; *Genova v. Buehler,* No. 80–C–802 (E.D.Wis., filed March 4, 1981); *see Hoppe v. Israel,* 516 F.Supp. 965 (E.D.Wis., 1981). In *Austin,* I also reasoned that "it may be appropriate to find harmless error if there is strong evidence of intent and the only evidence to the contrary is the defendant's own incredible assertions of a lack of intent." *Austin, supra,* at 468, citing *United States v. Bohlmann,* 625 F.2d 751, 753 (6th Cir. 1980) (per curiam).

Applicable to the case at bar are the comments made by me in another recent case involving the use of the invalid Wisconsin presumption instruction. In *Boyer v. Israel,* 515 F.Supp. 1369 (E.D.Wis., 1981), I stated that

> "use of the . . . instruction does not require issuance of the writ either (1) if intent was not the central issue at trial, or (2) if intent was the issue but there is nevertheless strong evidence of intent contradicted only by the defendant's incredible assertions to the contrary." *Id.,* at 1374; *accord, Wesley v. Israel,* No. 80–C–937 (E.D.Wis., filed June 15, 1981); *see Campbell v. Prast, supra.*

The petitioner contends that harmless error is never applicable in cases of this type. For support, he quotes *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which states: "Our cases have indicated that failure to instruct the jury on the necessity of proof beyond a reasonable doubt can never be harmless error." *Id.,* at 320 n.14, 99 S.Ct. 2781 at 2790, citing *Cool v.* *United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972). *Jackson* addressed an entirely different issue than that at bar. In addition, the jury at Mr. Drinkwater's trial was repeatedly instructed that they had to be satisfied of his guilt beyond a reasonable doubt. They were also instructed at least twice that the government had to meet that burden on all the elements of the crime. *See* Answer, Exh. H, pp. 4, 17. Thus the quoted section of *Jackson* has no bearing on this case.

The issue at bar is whether the use of the presumption instruction was harmless error despite its constitutional infirmity. That is an accepted analysis in cases of this type. *See, e. g., United States v. Bohlmann, supra; Krzeminski v. Perini,* 614 F.2d 121, 124 (6th Cir. 1980); *United States v. Reeves,* 594 F.2d 536 (6th Cir. 1979); *United States v. Durham,* 512 F.2d 1281 (5th Cir.), *cert. denied,* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975). The petitioner's argument to the contrary is not persuasive.

Mr. Drinkwater also argues that the use of the presumption instruction at his trial was not harmless error. He argues that by putting forth no specific defense, he placed in issue all the elements of the crimes. He also argues that under cross-examination, Mr. Nienow conceded that when Mr. Drinkwater said, "Shoot the son-of-a-bitch," he may have only meant to frighten Mr. Nienow. In addition, Mr. Drinkwater contends that in his summation the prosecutor emphasized the offensive language of the presumption, compounding the error.

As noted above, Mr. Drinkwater did not testify, and called no witnesses at trial. In his brief in support of the petition, he concedes that his attorney at trial "seemed to have no theory of defense. In summation he did not attempt to cast doubts on the witnesses' identification of petitioner nor did he attack any specific parts of the State's case. He seemed to be making a general reasonable doubt argument." Petitioner's brief, filed April 21, 1981, p. 4.

■ Mr. Drinkwater is correct that all elements of the crime were placed in issue, and that the prosecution had the burden to

convince the jury beyond a reasonable doubt. However, the writ does not issue simply because Mr. Drinkwater put all elements of the crime in issue. Instead, the Supreme Court has required "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*

Mr. Drinkwater's theory that when he spoke he only intended to frighten Mr. Nienow, and had no intent to kill, might have some merit if that were all that was in the record. Mr. Nienow testified that he did not know what Mr. Drinkwater meant when he spoke, but the words frightened him. Answer, Exh. F, pp. 83–84. However, the theory ignores the rest of the record, including the crucial testimony that as Mr. Drinkwater fled, he turned and fired a shot at Mr. Nienow as he lay wounded on the pavement. When that evidence is considered, the issues presented to the jury involve not only Mr. Drinkwater's intent, but also the believability of Mr. Drinkwater's theory of fright. Even if the matter of the defendant's intent were squarely put in issue, I am persuaded that the record contains strong evidence of intent that is virtually uncontroverted. The evidence presented at trial demonstrates beyond a reasonable doubt that Mr. Drinkwater formed the intent to kill.

I have also considered that portion of the prosecution's summation that Mr. Drinkwater finds objectionable. In *Austin*, the prosecution's summation was a key factor in my determination that harmless error was not present in that case. *Id.*, 516 F.Supp. at 468. In the case at bar, the prosecutor made none of the problematic statements found in *Austin*. In fact, he never alluded to a "presumption" at all.

In summary, I find that strong evidence of Mr. Drinkwater's guilt is present in the trial record. There is no merit to his argument that he merely intended to

frighten Mr. Nienow; little in the record substantiates this theory. Accordingly, under the circumstances of this case, the use of the presumption instruction was harmless beyond a reasonable doubt.

Therefore, IT IS ORDERED that Mr. Drinkwater's petition for a writ of habeas corpus be and hereby is denied.

IT IS ALSO ORDERED that this action be and hereby is dismissed.