McKinley **SHUMATE, Petitioner,**

v.

**MILWAUKEE COUNTY CIRCUIT COURT, et al., Respondents.**

Civ. A. No. 80–C–1137.

United States District Court, E. D. Wisconsin.

June 10, 1981.

James R. Glover, Shellow & Shellow, Milwaukee, Wis., for petitioner.

Sally L. Wellman, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

Relying on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), McKinley Shumate has filed a petition for the issuance of a writ of habeas corpus. In addition, prior to my giving the petition its preliminary consideration called for in Rule 4 of the rules governing 2254 cases, Shumate filed a motion for expedited consideration, in effect requesting immediate dismissal of the petition on the basis of my decision in *Pigee v. Israel*, 503 F.Supp. 1170 (E.D.Wis.1980).

The motion for expedited consideration has had the effect of placing more materials in the court record than are ordinarily present when preliminary consideration is given. I have now reviewed those materials.

Petitioner argues that the rationale of *Sandstrom v. Montana* requires that the Wisconsin jury instruction on criminal intent be declared unconstitutional because it shifts to the defendant the burden of proof on an essential element of the crime, and because the presumption is itself irrational. Shumate argues that because I decided in *Pigee, supra,* that no reasonable juror could place an unconstitutional interpretation on the instruction, his petition will inevitably be denied, and that therefore it should be denied immediately to allow a more expeditious appeal.

█ The Wisconsin instruction used during Mr. Shumate's 1973 trial on a charge of attempted murder states "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural, probable and usual consequences of his deliberate acts." In *Pigee,* I found that the Wisconsin instruction differed from the instruction found unconstitutional in *Sandstrom.* The obvious difference is that the Wisconsin instruction contains introductory language, "when there are no circumstances to prevent or rebut the presumption."

There is a tendency among petitioners especially, but also among judges, (*see dissent, Mueller v. State,* 94 Wis.2d 450, 289 N.W.2d 570 (1979)), to belittle any suggestion that the introductory clause can make a difference. I cannot, however, reconcile the conclusion that one short statement given during the course of a lengthy jury charge[1] can be highly significant—"the law

---

[1] A two-year, $228,000 research project funded by the National Institute of Mental Health and the Justice Department's National Institute of Justice reported last week that the average juror comprehends only about half of the legal instructions given by a judge on such basic points as the difference between the most and least severe charges against a defendant.

presumes that a reasonable person intend all the natural, probable and usual consequences of his deliberate acts"—and can in fact spawn pages and pages of legal analysis [2] which itself presumes somehow that jurors hear the same nuances in the word *presumes* as lawyers do, with the contrary conclusion that the introductory clause tells jurors nothing. In *Sandstrom*, Justice Brennan specifically recognized that his decision could have been different had the Montana instruction contained a statement to the jury that the presumption could be rebutted:

> "Petitioner's jury was told that '*the law presumes* that a person intends the ordinary consequences of his voluntary acts.' They were not told that the presumption could be rebutted, as the Montana Supreme Court held, by the defendant's simple presentation of 'some' evidence; *nor even that it could be rebutted at all.*" *Sandstrom* at 517, 99 S.Ct. at 2456 (Latter emphasis added).

Thus, as petitioner predicted I would, I again find the Wisconsin instruction constitutional.

██ However, in *Pigee* and the decisions on this issue which followed, my practice has been to state that view and then, in the alternative, consider the petitions as if the instruction were unconstitutional and determine whether the error, if it exists, is harmless. I have proceeded with an analysis of the harmless error doctrine as it applies to this petition, and have found that error if it existed in the giving of the instruction was, in this case, harmless beyond a reasonable doubt.

At trial other instructions were given which would cure any error in the challenged instruction. *See Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). In addition to receiving the challenged instruction on the attempted first degree murder count, the jurors were instructed that the defendant was innocent until proven guilty, and that the State bore the entire burden of proving guilt beyond a reasonable doubt. They were also instructed on a lesser included offense, endangering safety by conduct regardless of life. They were instructed specifically that:

> "If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant had formed in his mind the purpose to kill Michael Hodgden and performed acts toward the accomplishment of such attempt to kill which showed unequivocally that he had formed such intent, and that the killing was prevented only by the intervention of another person or some extraneous factor, then you should find the defendant guilty of attempted first-degree murder.

> \*    \*    \*    \*    \*    \*

> "If, however, you are not so satisfied, you must find defendant not guilty of attempted first-degree murder and you should consider whether the defendant is guilty of endangering safety by conduct regardless of life. . . . "

Commenting upon this study, Robert F. Peckham, Chief Judge of the U.S. District Court for the Northern District of California remarked, "I have always thought that jury instructions were written more for the eye of the appellate judges than for the ... jurors." I agree. While courts have grappled with the sentence of the instruction under discussion, I believe it is questionable, in the real world as opposed to the theoretical, whether it meant anything particularly significant to the average juror.

2. The instruction is not constitutionally infirm: *Genova v. State*, 91 Wis.2d 595, 283 N.W.2d 483 (1979 panel decision of Wisconsin Court of Appeals); *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1979) (a 6–1 decision of the Wisconsin Supreme Court); *Muller v. Israel*, 510

F.Supp. 730 (a March 18, 1981 decision from Judge Warren of this district) and *Hoppe v. Israel*, 516 F.Supp. 965 (a May 21, 1981 decision from this court).

The instruction is unconstitutional: *Adams v. State*, Wis.2d 875, 289 N.W.2d 318 (a 1979 panel decision of the Wisconsin Court of Appeals); *Austin v. Israel*, 516 F.Supp. 461 (a June 3, 1981 decision by Judge Gordon of this district); *Harris v. Israel*, 515 F.Supp. 568 (a June 3, 1981 decision by Judge Reynolds of this district).

*Also see Ross v. Israel*, 503 F.Supp. 131 (a 1980 decision of Judge Gordon that found the giving of the instruction to be harmless error without reaching the question of its constitutionality).

More importantly, if the Wisconsin instruction impermissibly shifts a burden to the defendant, whether it can be said to be a burden of production or of proof, it was harmless error to do so. The transcript indicates that the trial was short and simple. One of the counts charged was the *attempted* murder of a police officer who was not hit by the bullet which passed through the leg of his trousers. It is not, to stretch the possible interpretations of the Wisconsin instruction beyond good sense, a case in which the jury could have been confused into believing the presumption was conclusive, that it meant that if someone died as a result of a shooting, the person firing the shot intended to kill, the death being interpreted as conclusive proof of intent.

The only issue at trial on the attempted murder charge was intent. Defense counsel stated:

"That's what the defense intends to prove, and that it was not attempted murder; that the defendant did not intend to murder the policeman; that the shots that he fired were only intended on his part as warning shots. That is the sole extent of your defense in this case." Tr. p. 42.

The issue is clearly focused; intent is on center stage.

The state presented evidence going to intent. The police officer at whom Shumate shot testified that when they were approximately 10 feet apart, Shumate pointed his gun directly at him and fired. It is rational to allow a factfinder from this evidence to infer that Shumate intended to kill the officer. It is at this point that error can creep in because, in this case, the state has produced evidence from which intent can be inferred and no circumstances exist to indicate a lack of intent.[3] Shumate is now required to produce evidence to counteract that of the state.

If he must only raise a doubt in the juror's minds, there is no error under *Sand-*

*strom.* But even if one assumes that the instruction was interpreted unconstitutionally and that the burden of proof on intent was shifted, Shumate presented, when he took the stand, the only possible direct evidence on intent, his own statement that:

"Well, I won't dispute that Mr. Wright and the young lady what they saw, but at the time what I want to tell you is that when the incident happened is that I was under the influence of alcohol, and in the meantime that it was my intention—it wasn't my intention to shoot the police, and I shot at the ground. The police knows I wasn't shooting at him. In the meantime, like the robbery did occur on that day. Like I say, I won't disagree to Mr. Wright or whatever happened. I throw myself on the mercy of the court and the jury and give me some consideration that I was under the influence of alcohol. It wasn't my intention to shoot the police at all, because within that range there's no doubt about it he could have been shot. I shot at the ground." Tr. p. 43.

This statement denies the intention to kill the officer and offers as support for that denial the contention that he "shot at the ground. The police knows I wasn't shooting at him." Interestingly juxtaposed in this case, with little else in the record, is the statement of the policeman that Shumate shot at him and Shumate's statement that he shot at the ground. The policeman's statement contains the challenged inference—shooting directly at someone can show, in the absence of other circumstances, the intent to kill. Shumate, on the other hand, uses the same logic in his testimony: he said he shot at the ground; therefore he could not—and did not—intend to kill the policeman.

If believed, Shumate's statement, containing as it did a statement of lack of intent coupled with a statement as to his actions, would have met any burden of proof required. His statement, however, is

---

**3.** As I stated in *Pigee*, often circumstances preventing the presumption arise from the state's case-in-chief.

colored by self-interest and is contradicted by the state's version of Shumate's actions. The jury in this case simply did not believe Shumate. His problem was not the jury instruction, but credibility, the jury's evaluation of which should remain undisturbed.

IT IS THEREFORE ORDERED that the petition of McKinley Shumate for the issuance of a writ of habeas corpus is denied.