**Willie Lee PIGEE, Petitioner-Appellant,**

v.

**Thomas R. ISRAEL and Bronson C. LaFollette, Respondents-Appellees.**

**Nos. 81–1269, 81–1508.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1981.

Decided Feb. 3, 1982.

Rehearing and Rehearing En Banc Denied March 1, 1982.

Ben Kempinen, Legal Assistance to Institutionalized Persons Program, Madison, Wis., for petitioner-appellant.

Chris Heikenen, Asst. Atty. Gen., Wis. Dept. of Justice, Bronson C. LaFollette, Atty. Gen., Madison, Wis., for respondents-appellees.

Before BAUER, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BAKER, District Judge.*

FAIRCHILD, Senior Circuit Judge.

This appeal raises the question of whether, in a case in which intent is an element of the crime charged, the jury instruction that "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural probable and usual consequences of his deliberate acts" risks a violation of the Fourteenth Amendment's requirement that a state prove every element of a criminal offense beyond a reasonable doubt, under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We hold that the instruction given in this case did not create such a risk. Therefore we affirm the district court's denial of the Petitioner's request for a writ of *habeas corpus*.

The Petitioner was charged with two counts of attempted murder, arising out of events which occurred at the Club Marquis in Racine, Wisconsin, on April 16, 1972. A main issue at trial was whether the Petitioner intended to kill the two victims.

---

* Honorable Harold A. Baker, District Judge for the Central District of Illinois, sitting by designation.

Alverest Woodson, Myrna Kennedy, and Mr. and Mrs. Walter Baker arrived at the Club Marquis at about midnight. Shortly thereafter, comments were exchanged by the Petitioner and Mr. Woodson about the "hot pants" worn by Mrs. Kennedy.

Mrs. Baker testified at trial that she noticed the Petitioner had a gun under his trench coat and urged her companions to leave the Club. On their way out, a struggle ensued.

Mrs. Kennedy, Mr. Woodson, and other witnesses testified at trial that the Petitioner threatened to "blow" the brains out of Mr. Woodson and then did in fact shoot him. Mr. Woodson was shot twice in the chest. Mrs. Kennedy was shot once in the arm.

The Petitioner admitted the acts of shooting but denied that he intended to kill the victims and in fact denied that he intended to shoot them at all. The Petitioner testified that Mr. Woodson attacked him and that he pulled out his gun, but only to "bluff" Mr. Woodson, not intending to fire the gun.

A Special Agent of the Federal Bureau of Investigation testified that the Petitioner's gun was a type which could be fired only by depressing the grip safety and pulling the trigger. Both actions must be taken each time the weapon is fired.

The trial judge instructed the jury that "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural probable and usual consequences of his deliberate acts." The jury found the Petitioner guilty of the charge that he attempted to murder Woodson, but not guilty as to Mrs. Kennedy. He was sentenced to twenty years in prison.

The district court denied the Petitioner's request for a writ of *habeas corpus,* finding that no reasonable jury could have interpreted the instruction on intent in an unconstitutional manner.

■ The Petitioner contends that the instruction could have been interpreted by the jury to require the Petitioner to prove that he lacked intent to kill, thus shifting the burden of persuasion to him on the element of intent. Such an interpretation would violate the due process principle that the burden is on the state to prove every element of the crime charged beyond a reasonable doubt. *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See also, Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

The threshold inquiry is whether a reasonable jury could have interpreted the instruction in an unconstitutional manner. *Sandstrom, supra,* 442 U.S. at 514, 99 S.Ct. at 2454.

We begin by recognizing the problem, as courts always have, that state of mind (*i.e.,* intent, mental purpose, knowledge) must be determined circumstantially, by inference. Courts have deemed it wise to point out this problem to juries, lest they be too much troubled by the task of determining a person's state of mind without direct evidence, and usually without evidence of a specific admission or declaration of the person himself.

Courts have accordingly instructed juries that a particular state of mind can be inferred from a person's acts and utterances, and that it is rational and fair, where a determination must be made as to intent, to reason that a person intends the natural, probable, and usual consequences of his acts. Unfortunately, courts in phrasing the proposition have often used the word "presumed" instead of "inferred," leading to argument that the word "presumed" connotes that a fact exists unless disproved.

■ The Supreme Court has identified three types of presumptions of an element of the crime. *Sandstrom, supra,* and *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). First, a "conclusive presumption" is technically not a presumption at all, but is rather an irrebuttable direction by the court to find the elemental fact once convinced of the basic facts triggering the presumption. *Sand-*

*strom, supra,* 442 U.S. at 517, 99 S.Ct. at 2455.[1]

■ Second, a "mandatory presumption" requires the jury to find the elemental fact once convinced of the basic facts triggering the presumption, unless the defendant offers evidence to the contrary. *Sandstrom, supra,* 442 U.S. at 515, 99 S.Ct. at 2454. A mandatory presumption can be subdivided into two parts. The presumption can require the jury to find the elemental fact unless the defendant offers "some" evidence to the contrary. *Sandstrom, supra,* 442 U.S. at 517, 99 S.Ct. at 2455; *Ulster County Court, supra,* 442 U.S. at 157–158, 99 S.Ct. at 2224–2226. Such a presumption shifts the burden of production to the defendant on that element of the crime. *Sandstrom, supra,* 442 U.S. at 517, 99 S.Ct. at 2455.

Alternatively, the presumption can require the jury to find the elemental fact unless the defendant proves the contrary by "some quantum of proof" greater than "some" evidence. *Id.* Such a presumption effectively shifts the burden of persuasion to the defendant on that element of the crime. *Id.*

■ Third, a "permissive presumption" allows, but does not require, the jury to infer the elemental fact once convinced of the basic facts, but places no burden of proof of any kind on the defendant. *Ulster County Court, supra,* 442 U.S. at 157, 99 S.Ct. at 2224. This "presumption" is technically not a presumption at all; it is merely an inference available to assist the factfinder, at his option, in evaluating the evidence.[2]

In *Sandstrom,* the Supreme Court concluded that a reasonable jury could have interpreted the instruction given in that case by a Montana trial court as stating a mandatory presumption, rebuttable only by

proof to the contrary by some quantum of proof greater than "some" evidence, thus shifting the burden of persuasion to the defendant on that element of the crime. 442 U.S. at 517, 99 S.Ct. at 2455. The Court further decided that the instruction could even have been interpreted as stating a conclusive presumption. *Id.*

The fatal flaw in the instruction in *Sandstrom* was that the jury was not told the presumption could be rebutted by "some" evidence or by any evidence at all. The instruction simply told the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* The Court was concerned that the lack of qualifying instructions as to the legal effect of the presumption might lead the jury to construe the instruction as stating either a conclusive presumption or the type of mandatory presumption which shifts the burden of persuasion to the defendant. *Id.*

Both of these possible interpretations of the instruction by the jury conflicted with the overriding presumption of the innocence of the accused and with the state's burden of proving beyond a reasonable doubt all elements of the crime charged. *Id.,* at 524, 99 S.Ct. at 2459.[3] Thus the instruction posed a risk that Sandstrom was convicted without due process of law. In *Ulster County Court,* the trial judge instructed the jury that:

> "Our Penal Law ... provides that the presence in any automobile of any ... firearm which is loaded is presumptive evidence of [its] unlawful possession.
>
> "In other words, ... you may infer and draw a conclusion.... The presumption ... is effective only so long as there is no evidence contradicting the conclusion flowing from the presumption, and the

---

1. *See also,* J. Wigmore, Evidence in Trials at Common Law § 2492 (Chadbourn rev. 1981); McCormick's Handbook of the Law of Evidence 804 (2nd ed. 1972).

2. Wigmore, *supra,* at § 2491; McCormick, *supra,* at 804 n. 31. The only true presumption then is the mandatory presumption, since the

conclusive presumption is actually a conclusion, and the permissive presumption is actually a permissible inference.

3. *See also, Morissette, supra,* 342 U.S. at 275, 72 S.Ct. at 255; *Mullaney, supra,* 421 U.S. at 704, 95 S.Ct. at 1892.

presumption is said to disappear when such contradictory evidence is adduced." 442 U.S. at 161, 99 S.Ct. at 2226.

The Supreme Court concluded that no reasonable jury could have interpreted this instruction in an unconstitutional manner. The instructions as a whole made it clear that the presumption was merely a permissive inference which the jury knew it was free to accept or reject. *Id.*, at 161–162, 99 S.Ct. 2226.

The instruction on intent in this case is substantially different from the instruction given in *Sandstrom.* The instruction contains the crucial qualifying language which the Supreme Court found lacking in *Sandstrom.* 442 U.S. at 517, 99 S.Ct. at 2455. It is prefaced by the phrase, "When there are no circumstances to prevent or rebut...."

Furthermore, the challenged instruction refers to the consequences of "deliberate" acts. The instruction in *Sandstrom*, referred to the consequences of "voluntary" acts.[4]

A voluntary[5] act is intended, and not merely an accident. A deliberate[6] act is something more; it involves actions which are carefully considered, as a result of some prior weighing of the acts and their consequences. The instruction in this case tells the jury that intent may be presumed from deliberate acts. The jury must first determine whether the defendant's acts were deliberate, based on the evidence. Unless the jury finds that defendant performed a deliberate act, the natural, probable, and usual consequences of which would be the killing of another, the presumption does not arise.

Additionally, the challenged instruction states that "the law presumes that a *reasonable* person intends ...." (Emphasis added.) The instruction in *Sandstrom*

merely stated that "the law presumes that a person intends ...." Thus, the instruction in this case indicates that the presumption may be applied only if the jury decides that defendant was a reasonable person.[7]

Although of minor significance, we note that the challenged instruction states that the law presumes that an actor intends "the *natural probable and usual* consequences ...." (Emphasis added.) In contrast, the instruction in *Sandstrom* states that the law presumes intent from "the *ordinary* consequences...."[8] (Emphasis added.)

The challenged instruction not only qualifies the presumption with the key language, "When there are no circumstances ..." found lacking in *Sandstrom*, but also goes further to state, "When there are no circumstances *to prevent or rebut* ...." (Emphasis added.) This language apprises the jury that circumstances may either prevent the use of the presumption at all or rebut the presumption. Thus, the jury must completely disregard the presumption in the first instance if circumstances prevent its use. In our view this leaves it to the jury to decide whether the presumption is reasonable under the circumstances. Alternatively, the jury may consider the presumption and then decide whether any circumstances, however or by whomever proved, defeat the presumption. The choice belongs to the jury.

The inquiry before us under *Sandstrom* is whether a reasonable jury could have interpreted the instruction given in this case in a manner which would violate due process. That is a federal question as to which we are not bound by the Wisconsin Supreme Court's determination in *Muller v. State,* 94 Wis.2d 450, 289 N.W.2d 570 (1980), that an instruction identical to the instruction challenged here stated a mandatory

---

4. *See Genova v. State*, 91 Wis.2d 595, 618, 283 N.W.2d 483, 493–494 (Ct.App.1979). *But see Muller v. State*, 94 Wis.2d 450, 478–479, 289 N.W.2d 570, 584 (1980) (Abrahamson, J., *dissenting*).

5. *See* Black's Law Dictionary at 1413 (5th–ed. 1979).

6. *See* id., at 384.

7. *Accord, Genova, supra*, 91 Wis.2d at 617, 283 N.W.2d at 493. *But see Muller, supra*, 94 Wis.2d at 478–479, 289 N.W.2d at 584 (Abrahamson, J., *dissenting*).

8. *See* footnote 7.

presumption. We therefore reject Petitioner's contention on that score. We think that the instruction given in this case would be interpreted by a reasonable jury as stating no more than a permissive inference, available only if there are no circumstances to prevent or rebut it.

▉ But even assuming that a jury might view the presumption in the challenged instruction as mandatory, requiring the jury to find intent unless the defendant offers evidence to the contrary, the presumption imposes at most an extremely low burden of production on the defendant. He can rebut the presumption with *any* evidence of any circumstances. The presumption applies only when no circumstances exist to prevent or rebut it. Consequently, the impact on the jury is no greater than a permissive inference, and we may properly analyze it as such. *Ulster County Court, supra*, 442 U.S. at 158 n. 16, 99 S.Ct. at 2226 n. 16.

We have so far analyzed the challenged instruction only in isolation from the other instructions given by the trial judge in this case. Any conceivable question, however remote, that the jury might have had regarding interpretation of the challenged instruction was removed by these other instructions.[9]

The instructions, viewed as a whole, emphasized that the state must prove all elements of the crime beyond a reasonable doubt. The jury was told that the offense required acts which "demonstrate unequivocally under all the circumstances that he intended to, and would have killed . . . except for the intervention of another person or some other extraneous factor . . . ." The judge further explained that unequivocally means "that no other inference or conclusion can reasonably and fairly be drawn from the defendant's acts under the circumstances. . . ."

The judge instructed the jury that intent "must be found, if found at all, from his acts, his words, his statements, if any, bearing on his intent. You cannot look into a man's mind to find out his intent." The jury was also told to "scrutinize the evidence with the utmost care and caution, . . . and act with . . . judgment, reason, prudence, and discrimination. . . ."

Finally, the judge explained that "[t]he defendant is not required to prove his innocence. The burden of proving the defendant guilty of every element of the crime charged is upon the state."

▉ Petitioner's challenge also requires us to evaluate the strength of the connection between the basic and elemental facts involved in the challenged inference of intent. *Ulster County Court, supra*, 442 U.S. at 156, 99 S.Ct. at 2224. To be upheld, the instruction must not only pass the first test of how a reasonable jury might interpret the inference, but it must also pass this second test: A permissive inference is valid as long as there is a rational connection between the basic facts and the elemental fact. *Id.*, at 157, 163, 99 S.Ct. at 2224, 2227.[10] Thus, we must determine whether the inferred fact (intent to kill) is more likely than not to flow from the basic facts (deliberate acts of the defendant, the natural, probable, and usual consequence of which is the death of another). *Id.*, at 165, 99 S.Ct. at 2228.

As applied to the facts of this case, the permissive inference of intent is entirely rational. The Petitioner shot two persons as a result of a struggle in a bar. If the jury found, based on all of the evidence, that the Petitioner's acts of shooting were deliberate, then the jury could have reasonably inferred that the Petitioner intended the natural, probable, and usual consequences of such shooting, to kill his victims. On the other hand, the jury was not told that it could infer intent to kill from the acts which were not deliberate.

9. *Accord, Jacks v. Duckworth*, 651 F.2d 480 (7th Cir. 1981), *cert. denied*, 50 U.S.L.W. 3547 (Jan. 11, 1982); *United States v. Tecumseh*, 630 F.2d 749 (10th Cir.), *cert. denied*, 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980).

10. *See also, Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943); *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969).

The deliberateness of the Petitioner's acts was a question of fact for the jury to decide. Once decided, the inference of intent was available for their use.[11]

Our decision in this case is in accord with the recent decision of this court in *Jacks v. Duckworth*, 651 F.2d 480 (7th Cir. 1981), *cert. denied*, 50 U.S.L.W. 3547 (Jan. 11, 1982). The challenged instruction in *Jacks*, in a trial in an Indiana court, was that "every one is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are such as to indicate the absence of such intent." *Id.*, at 491. This court held that the instruction, which was similar to the instruction challenged in the case before us, was valid. A reasonable jury could have only interpreted the instruction as stating a permissive inference. *Id.*, at 485–486.

As is apparent, we do not interpret *Sandstrom* as holding unconstitutional every instruction phrased as presuming intent from conduct.[12] Rather, the Court in *Sandstrom* was concerned with the degree of risk of improper interpretation posed by the use of such language.

Our conclusion that the instruction in this case does not pose the risk found impermissible in *Sandstrom* renders unnecessary any consideration of the question of whether *Sandstrom* should be applied retroactively. We observe, however, that a sweeping application of the doctrine in *Sandstrom* would provide greater reason to limit the doctrine to prospective application, for the more clearly *Sandstrom* would then appear to have been intended to constitute a prophylactic against any risk of shifting the burden of proof to defendants.[13] *Sandstrom* has led to a plethora of cases challenging a variety of jury instructions as violations of the Due Process Clause of the Fourteenth Amendment.[14] Wisconsin alone has had numerous cases challenging instructions which state a "presumption" of intent.[15] Trial judges, both state and federal, would be wise in the future to avoid "presumption" language in this area, in favor of language pointing out inferences which can permissibly be drawn from conduct and emphasis on the prosecution's burden at all times to prove guilt beyond a reasonable doubt.[16]

11. The fact that the jury acquitted the Petitioner on one of the two counts of attempted murder is at least some indication of how the jury could have utilized the instruction on intent. On the one hand, the jury could have found that the Petitioner's acts of shooting were deliberate, but that the circumstances indicated that he lacked intent to kill one of the two. On the other hand, the jury could have found that the Petitioner's acts with regard to one victim were entirely by accident or recklessness, and thus were not deliberate. *See Ulster County Court, supra,* 442 U.S. at 162 n. 23, 99 S.Ct. at 2227 n. 23.

12. Indeed, *Ulster County Court* confirms this interpretation of *Sandstrom*.

13. *Accord, Jacks, supra,* 651 F.2d at 486; *United States v. Spiegel,* 604 F.2d 961, 969 (5th Cir. 1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980) (but, issue of retroactivity of *Sandstrom* was not raised in the petition for *certiorari*). *Cf. Burton v. Bergman,* 649 F.2d 428, 431 (6th Cir. 1981), *petition for cert. filed,* August 17, 1981, No. 81–310 (issue of retroactivity of *Sandstrom* has been presented in petition for *certiorari*).

14. *See, e.g., Jacks, supra; Spiegel, supra; Tecumseh, supra; Krzeminski v. Perini,* 614 F.2d

121 (6th Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980); *United States v. Ciampaglia,* 628 F.2d 632 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980); *Bonnett v. Solem,* 640 F.2d 125 (8th Cir.), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2329, 68 L.Ed.2d 849 (1981); *United States v. Ross,* 626 F.2d 77 (9th Cir. 1980); *United States v. Ogle,* 613 F.2d 233 (10th Cir. 1979), *cert. denied,* 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980); *Baker v. Muncy,* 619 F.2d 327 (4th Cir. 1980).

15. *See, e.g., Muller, supra; Genova, supra; Adams v. State,* 92 Wis.2d 875, 289 N.W.2d 318 (Ct.App.1980); *Dreske v. Department of Health and Social Services,* 483 F.Supp. 783 (E.D. Wis. 1980); *Ross v. Israel,* 503 F.Supp. 131 (E.D. Wis.1980); *Muller v. Israel,* 510 F.Supp. 730 (E.D. Wis. 1981); *Austin v. Israel,* 516 F.Supp. 461 (E.D.Wis.1981); *Harris v. Israel,* 515 F.Supp. 568 (E.D.Wis.1981); *Hoppe v. Israel,* 516 F.Supp. 965 (E.D.Wis.1981); *Shumate v. Milwaukee Cty. Circuit Court,* 515 F.Supp. 723 (E.D.Wis.1981).

16. *Accord, Jacks, supra,* 651 F.2d at 486; *Muller, supra,* 94 Wis.2d at 490, 289 N.W.2d at 590 (Abrahamson, J., *dissenting*); *Genova, supra,* 91 Wis.2d at 621, 283 N.W.2d at 495. We note

Concluding, as we do, that the challenged instruction on intent posed no risk that Petitioner's conviction failed to satisfy the Fourteenth Amendment's requirement that a state prove every element of a criminal offense beyond a reasonable doubt, we AFFIRM the judgment of the district court denying the Petitioner's request for a writ of *habeas corpus.*

AFFIRMED.

BAKER, District Judge, dissenting.

I respectfully dissent. I am of the opinion that the majority decision is in collision with *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and that giving the jury instruction in question in this case deprived the petitioner of his right to due process of law.

## I.

With the exception of the introductory clause, "When there are no circumstances to prevent or rebut the presumption," and the substitution of the words, "deliberate acts," for the words, "voluntary acts," the instruction condemned in *Sandstrom* and the instruction here are virtually the same.[1] The majority relies on the introductory clause and the word, "deliberate," to decide that reasonable jurors could not conclude that the element of intent was to be presumed or that it fell to the defendant to disprove

the existence of intent to kill. That reliance is misplaced.

Rather than being crucial qualifying language that saves the instruction from an unconstitutional impact, the prefatory language, "When there are no circumstances to prevent or rebut ...," condemns the instruction and makes possible the untenable interpretation that the defendant must disprove intent. The common meaning and understanding of the word, "rebut," is "refute" or "disprove." Webster's New Collegiate Dictionary 963 (1977). The jury was not instructed that the existence of the basic facts did not automatically trigger the presumption and require the defendant to rebut it. The jury was left to its own speculations on that point. *See also Ulster County Court v. Allen*, 442 U.S. 140, 158–59 n. 16, 99 S.Ct. 2213, 2226 n. 16, 60 L.Ed.2d 777 (1979).

The reference to the consequences of "deliberate acts" is offset by the second sentence in the challenged instruction which, in explaining what basic facts lead to the presumed fact, makes no effort to distinguish between deliberate and voluntary acts. Moreover, no definition of "deliberate" was given to the jury and no attempt was made by the trial judge to distinguish between voluntary acts and deliberate acts as is done in the majority opinion. See Petitioner's Appendix at 130–53 (trial court's charge).[2]

---

1. that the Uniform Jury Instructions Committee in Wisconsin proposed in 1977 an alternative to the instruction challenged in this case. This proposed instruction reads in pertinent part:

   > Intent to kill must be found as a fact before you can find the defendant guilty of first degree murder. You cannot look into a person's mind to find out his intent. You may determine such intent directly or indirectly from all the facts in evidence concerning this offense. You may consider any statements or conduct of the defendant which indicate his state of mind. You may find intent to kill from such statements or conduct. You are the sole judges of the facts and you must not find the defendant guilty unless you are satisfied beyond a reasonable doubt that the defendant intended to kill.

   Uniform Jury Instructions Committee, Instruction 1100.

1. The jury in *Sandstrom* was instructed, "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom v. Montana*, 442 U.S. at 513, 99 S.Ct. at 2453. The jury in *Pigee* was instructed, "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural probable and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon, likely to kill, then when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended." Petitioner's Appendix at 135–36.

2. The "deliberate" character of the act has no bearing on the effect to be given the evidentiary device but goes only to the rational connection test. *Sandstrom v. Montana*, 442 U.S. at 512 n.1, 99 S.Ct. at 2453 n.1 (Montana defined "deliberate homicide" as criminal homicide

If the fatal flaw in the *Sandstrom* instruction, as the majority reasons, was the failure to tell the jury how the instruction was to be rebutted, then how was that flaw remedied here? There is nothing, not a word of explanation, in the trial court's charge as to how the presumption of intent is to be rebutted or how it could satisfy the State's burden of proving the element of intent. Compare that to the instructions on the presumption of possession in *Ulster County Court v. Allen*, 442 U.S. 140, 160–61 nn.19, 20, 99 S.Ct. 2213, 2226–27 nn.19, 20 (1979) where the trial judge meticulously explained the use and effect of the presumption and also told the jury, "The presumption . . . need not be rebutted by affirmative proof or affirmative evidence but may be rebutted by any evidence or lack of evidence in the case." In *Ulster* the balance of instructions made clear that the challenged instruction raised a permissive inference that the jury could accept or reject as it saw fit. That is not the case here.

In this case the instructions viewed overall outline the two elements of attempted murder under Wisconsin law. First, that the defendant intended to kill, and, second, that the defendant committed acts which demonstrate unequivocally that he would have killed except for the intervention of other factors. The instructions say that the State must prove each of the elements but then say that the first element of intent is proved from circumstances and that the law presumes intent from certain circumstances unless the presumption is rebutted. Since the common meaning of rebut is to refute or disprove, a possible interpretation jurors could draw is that the law required intent to be presumed from the circumstances of the shooting and that the burden fell upon the defendant to disprove intent. See *Sandstrom v. Montana*, 442 U.S. at 518 n.7, 99 S.Ct. at 2456 n.7.

The question whether a defendant has been accorded his constitutional rights depends upon the way in which reasonable

jurors *could* have interpreted the instruction. *Id.* at 514, 99 S.Ct. at 2454.

The majority says, and I am sure that it is true, that whether reasonable jurors would interpret the challenged instruction as raising a permissive inference is a federal question, and the decision of the Wisconsin Supreme Court in *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1980) that the instruction states a mandatory presumption is not binding on this court.

In determining the possible interpretation jurors might afford the presumption, it is incongruous to overlook conflicting decisions of courts that have considered the instruction. *See also id.* at 517, 99 S.Ct. at 2455.

The Supreme Court of Wisconsin is divided on the question as are the appellate courts of that state. See *Muller v. State*, 94 Wis.2d 450 at 478, 289 N.W.2d 570 at 584 (1980) (Abrahamson, J. dissenting). The instruction has been held unconstitutional and in conflict with *Sandstrom* in *Drinkwater v. Gagnon*, 521 F.Supp. 1309 (E.D.Wis.1981); *Austin v. Israel*, 516 F.Supp. 461 (E.D.Wis. 1981); *Boyer v. Israel*, 515 F.Supp. 1369 (E.D.Wis.1981); *Harris v. Israel*, 515 F.Supp. 568 (E.D.Wis.1981). The instruction has been held constitutional and not in conflict with *Sandstrom* in *Hoppe v. Israel*, 516 F.Supp. 965 (E.D.Wis.1981); *Shumate v. Milwaukee County Circuit Court*, 515 F.Supp. 723 (E.D.Wis.1981). The judges of the Wisconsin courts cannot agree unanimously as to the effect of the challenged instruction, neither can the federal district judges of the Eastern District of Wisconsin. How then will twelve lay persons, most if not all of whom are having their initial experience with the law, arrive at a unanimous and constitutionally acceptable interpretation of the instruction?

II.

If the presumption here is like that in *Sandstrom* and could reasonably be inter-

---

committed "purposefully or knowingly."); *Muller v. State*, 94 Wis.2d 450 at 478 n.1, 289 N.W.2d 570 at 584 n.1 (1980) ("There is also no distinction between the meaning of the words

'deliberate' and 'voluntary' in the context of this presumption.") (Abrahamson, J. dissenting).

preted as shifting the burden of persuasion on an element of the case, then it should not be necessary to evaluate the rational connection between the basic facts and the elemental fact. *See generally Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *But see Ulster County Court v. Allen,* 442 U.S. 140, 166–67, 99 S.Ct. 2213, 2229, 60 L.Ed.2d 777 (1979). However, it should be pointed out that the statement in the majority decision on the rational connection that, "the jury was not told that it could infer intent to kill from acts which were not deliberate," is open to debate. The second sentence of the challenged instruction, as has already been noted, refers to specific acts which would support the presumption without denominating those acts as deliberate or voluntary.

Nor can I agree that the majority decision is in accord with *Jacks v. Duckworth,* 651 F.2d 480 (7th Cir. 1980), *cert. denied,* 50 U.S.L.W. 3533 (January 12, 1982).

The challenged instruction in *Jacks,* 651 F.2d at 491 (Appendix C), has significant differences from the challenged instruction in this case. The *Jacks* instruction did not use the language used here concerning the rebuttal of the presumption of intent which could have effectively shifted the burden of proof to the defendant on the issue of intent. *Jacks* did not involve the confusion of deliberate acts as opposed to voluntary acts which is found in the *Pigee* instruction.

Finally, I would observe that we are dealing with the fundamental concept that due process protects a defendant against conviction except upon proof by the government beyond a reasonable doubt of every element of the crime with which he is charged. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Where there is rational foundation to the possibility that due process has been denied, as there is here, we should insist on strict adherence to the concept.

I would reverse and grant the writ.