**Walter ROGERS, Petitioner,**

v.

**Thomas ISRAEL, et al., Respondents.**

**Civ. A. No. 81–C–653.**

United States District Court,
E.D. Wisconsin.

Dec. 7, 1984.

William J. Tyroler, Asst. State Public Defender, Milwaukee, Wis., for petitioner.

Thomas J. Balistreri, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondents.

## DECISION and ORDER

TERANCE T. EVANS, District Judge.

There must be something wrong with finality in criminal cases. If there isn't, why does our dual court system go out of its way to fight a never-ending battle against it? This case clearly demonstrates that the battle goes on and on and on and on.

Here are the facts. Angelo Griffin was killed in a Racine, Wisconsin, tavern on May 29, 1976. Lest one think a typographical error has occurred, I repeat the date,

May 29, 1976. The petitioner here, Walter Rogers, was promptly charged with first degree murder. The case went to trial before a Racine jury and Judge James Wilberside in September of 1976, and Rogers was convicted of the crime charged. Kudos to the criminal justice system in Racine! In this era of delay, it acted quickly and appropriately. But hold the pickles, hold the lettuce, the case is not closed. As the President would say, "You ain't seen nothing yet."

On November 19, 1976, post-conviction motions were argued in state court. They were denied by Judge Wilberside.

After the post-trial motions were denied, Rogers got a new lawyer. The new lawyer didn't think the original one had done that good a job so he filed a second round of state post-conviction motions, claiming that Rogers was denied the effective assistance of counsel because Martin Hanson, Rogers' trial counsel, had not presented expert testimony from a physician to contest that of the state's expert. In preparation for trial, Hanson (as he testified at the state post-trial hearing) talked to physicians about the case, but they basically did not disagree with the state's expert. A hearing on the motions was held in state court on November 11, 1977, 14 months after the trial had started and one year after the first set of post-conviction motions had been denied.

At the conclusion of the hearing on November 11, 1977, Judge Wilberside, in a thorough and thoughtful bench decision, denied the motions. The judge found that Hanson had provided competent representation during the trial. Once again, kudos to the Racine justice system, and particularly to Judge Wilberside. He got to the point and decided the issue promptly without falling into the old judicial trap of taking it "under advisement."

As everyone knows, however, this train has just begun its journey. The next stop is an appellate court.

In a decision issued on March 5, 1979, the Wisconsin Court of Appeals denied relief to Rogers. The court's unanimous opinion,

authored by Judge Bode and joined by Judges Moser and Brown, found that ineffective representation had not occurred. The Wisconsin Supreme Court denied review.

Despite the fact that 12 jurors and eleven judges at three different levels of the Wisconsin court system have looked at this case, it now moved into the federal court system with the filing, on June 9, 1981, of Rogers' petition for a writ of habeas corpus.

Before getting to what occurred here, a point about federal habeas corpus should be emphasized. Nothing in this decision, which is admittedly critical of the way this case has progressed through the dual court system, should be interpreted as meaning that access to the federal courts via habeas should be curtailed. However, federal courts should remember that the writ is *The Great Writ,* and as such it should not be used to nitpick over what other judges and jurors have done. In short, the writ should not be trivialized. To have any redeeming social value as a last vestige against state injustice, it should be decided—one way or the other, sooner than 8 years after a petitioner entered the prison yard. If justice has miscarried in Rogers' case, it has taken far too long to correct it. And, if his claim is without merit, the repeated and microscopic examination it has received is more than it deserves.

I reviewed the petition and briefs submitted and, on November 22, 1982, entered a written Decision and Order denying relief to Rogers. Believing the issue presented to be unworthy of publication, I declined to submit it. Because the case continues to live and because I feel that my decision should now be made part of its official record, I incorporate it herein and, with the entry of this decision, will submit both for publication.

On December 15, 1982, Rogers filed a notice of appeal of my Order with the United States Court of Appeals for the Seventh Circuit. Seventeen months after the notice of appeal was filed, on May 7, 1984, oral arguments on the case were heard in Chica-

go. On October 16, 1984, over 8 years after Rogers went to trial in Racine, the court, in a 2–1 decision, reported at 746 F.2d 1288 (7th Cir., 1984), remanded the case, stating:

> Accordingly, we remand this case to the district court, where the petitioner must show that the failure to develop facts regarding the consulted physicians was not due to inexcusable neglect or deliberate bypass. If the petitioner fails in this showing, the writ of habeas corpus will be denied.[8] If the petitioner succeeds in showing the absence of inexcusable neglect or deliberate bypass, the district court must hold an evidentiary hearing, at which both parties may present evidence regarding the defense counsel's efforts to obtain expert testimony. If, after this hearing, the district court finds that none of the physicians consulted by the defense counsel could have been qualified as an expert, the counsel's performance must be judged to have been unreasonable and prejudicial, as discussed in this opinion, and the writ will be granted. If, on the other hand, the district court finds that the trial counsel consulted a physician who could have been qualified as an expert, thereby fulfilling his duty toward his client, the writ will be denied.

8 Without showing the absence of inexcusable neglect or deliberate bypass, the petitioner is considered to have waived further development of facts. *See generally Fay v. Noia,* 372 U.S. [391] at 438 [83 S.Ct. 822, 848, 9 L.Ed.2d 837]; *Thomas v. Zant,* 697 F.2d [977] at 981. In the present case, the facts that were established at the state court hearing do not demonstrate that the "physicians" consulted by the trial counsel could not have been qualified as experts. Thus, if we were to consider only these facts, we could not conclude that the petitioner met his burden of demonstrating ineffective assistance of counsel. *See, e.g., Marino v. United States,* 600 F.2d 462, 464 (5th Cir.1979) ("a defendant represented by retained counsel who urges ineffectiveness of counsel bears the burden of establishing that charge, by a preponderance of the evidence").

The mandate from the Court of Appeals was received here on November 14, 1984. So now, a new—two-tiered perhaps—proceeding is to be conducted in the district

court. First, the "inexcusable neglect or deliberate bypass" issue must be addressed. Then, assuming Rogers can show me that the failure to develop facts at the second state post-conviction hearing regarding the consulted physician was not due to inexcusable neglect or deliberate bypass (question: if he can't show it, does he have a new denial of effective assistance of counsel claim against his present attorney?), he gets an evidentiary hearing at which both parties may present evidence regarding Attorney Hanson's efforts to obtain testimony from a "physician who could have been qualified as an expert."

The murky "neglect/bypass" issue apparently must be addressed even though the second tier of the proceeding involves what may be a foregone conclusion. I may be wrong, but it would seem that *any* physician, simply on the basis of having got into and successfully completed medical school, should be "competent" to give an opinion on the subject matter of this dispute. Sure, the weight to be given to that opinion may depend on many factors, but the propriety of giving it, for what it's worth, would seem to be proper.

By the time this is all resolved here, again in the Court of Appeals, perhaps in the United States Supreme Court, or, if the writ is granted, in a new trial in Racine, Rogers may not only be on parole, but be discharged from it. Given this possible scenario, is it any wonder why the courts are overburdened, finality hardly ever reached, and an ever-growing segment of our population becoming justifiably perturbed as we judicial officers fail to heed the call to correct the folly of our ways.

A proceeding, on the "inexcusable neglect and deliberate bypass" issue, is scheduled for January 21, 1985, at 2:00 p.m.

## APPENDIX

## DECISION and ORDER

Before me is Walter Rogers' petition for a writ of habeas corpus.

Rogers alleges that his due process rights were violated because the jury at his state court trial was improperly instructed on the element of intent to kill, and that his right to the effective assistance of counsel was violated because his trial counsel failed to call an expert witness to rebut the testimony of the state's pathologist.

The first ground is not argued by Rogers, no doubt for the reason that *Pigee v. Israel,* 670 F.2d 690 (7th Cir.1982), *cert. den.,* 459 U.S. 846, 103 S.Ct. 103, 74 L.Ed.2d 93 (1982), seals his fate on the issue. In his brief, however, Rogers argues that the closing argument of the prosecutor regarding the law on intent was improper. That issue is not presented in his petition and will not be considered here. Ironically, if the argument were considered, I believe the petition would have to be dismissed under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), because the issue was not, so far as I can determine, presented to the state courts.

On September 17, 1976, Rogers was convicted in the Circuit Court for Racine County of first degree murder in connection with the killing of Angelo Griffin. His conviction was affirmed by the Wisconsin Court of Appeals on March 5, 1979. His petition for review by the Supreme Court of Wisconsin was denied.

The facts reveal that on the afternoon of May 29, 1976, Rogers and Griffin were at Al's Vega Lounge in Racine where they became involved in a dice game with other patrons. Apparently, Rogers refused to pay off on a bet and Griffin pulled the money from his hand. A few minutes later, Rogers pulled a gun from his pocket, pointed it at Griffin, and fired. Griffin threw up his arms and ran toward Rogers. A brief struggle occurred and another shot was fired. Both men fell to the floor but only the petitioner got up. Griffin never moved again and was pronounced dead on arrival at a local hospital.

It was undisputed that two shots were fired, but that only one struck Griffin.

Presumably, the other bullet went through the ceiling.

The central issue at trial was which shot killed Griffin. The state contended that it was the first, while the theory of the defense was that the second was the fatal shot. The state's theory of the crime was that Griffin was wounded by the first shot, rushed forward and struggled with Rogers, but then collapsed without being struck by the second bullet.

At trial, the prosecution called Dr. Myron Schuster, who performed an autopsy on Griffin. He testified that Griffin died of a single gunshot wound to the chest with the bullet perforating the heart. Lending credence to the state's theory of the case, Schuster testified that death from the type of wound Griffin sustained would be relatively rapid, but that it would be possible for the wounded person to move under his own power for an indeterminate period of time.

The defense contended that the second shot killed Griffin, pointing out that he collapsed immediately after that shot. No medical evidence or expert testimony was introduced to refute Dr. Schuster's statement.

Rogers filed a post-conviction motion in the trial court pursuant to § 974.06, Wis. Stats., in which he alleged that he was denied the effective assistance of counsel. A hearing on the motion was held on November 11, 1977, at which Rogers, represented by an attorney from the office of the State Public Defender, called both his trial lawyer and Dr. Billy J. Bauman, a professor of pathology at the University of Wisconsin Medical School. After reviewing the trial testimony and the autopsy report of Dr. Schuster, Dr. Bauman prepared his own report in which he stated his opinion that the second shot killed Griffin. He stated that the fatal wound to Griffin was of such severity that the victim would have been "almost immediately incapacitated." Tr. of Hearing November 11, 1977, pp. 15–17.

Attorney Martin I. Hanson, who represented Rogers at trial, testified at the post-conviction hearing that prior to trial he discussed Dr. Schuster's findings with physicians from the Racine area to determine whether he could obtain a contrary medical opinion as to the effect of a bullet wound such as Griffin suffered. None of the physicians he consulted were pathologists. And none of them would say that the victim of such a wound would be immediately totally incapacitated. Rogers' motion for post-conviction relief was denied in the state court.

In connection with his petition for habeas corpus relief in this court, Rogers has requested an evidentiary hearing. I have read the recent decision of the Court of Appeals in *U.S. ex rel. Cosey v. Wolff,* 682 F.2d 691 (7th Cir.1982), in which on a claim of ineffective assistance of counsel the district court was instructed to provide petitioner with a hearing. I find, however, that Rogers' case differs significantly from *Cosey.* So far as I can tell, in *Cosey* petitioner had never had a hearing. The Court of Appeals saw unresolved factual questions which could only be answered by the testimony of trial counsel. Here, Rogers has been provided with a full hearing in state court. During the hearing Rogers' trial counsel, Mr. Hanson, testified about the steps he had taken to obtain expert testimony. Hanson also candidly stated that had he known about Dr. Bauman, he would have used his testimony. Considering the record developed at the state hearing, I find that another hearing on the same issue in this court would be of no benefit and the request for an additional hearing is denied.

In order to prevail on a claim of ineffective assistance of counsel, it is not enough for petitioner to demonstrate that counsel made errors, even egregious ones, tactical or strategic, in either preparing for trial, in examining witnesses, or in not calling potential witnesses:

> "... The burden is upon the [petitioner] to defeat the presumption that the attorney was conscious of his or her duties to the client and that he or she sought conscientiously to discharge those

duties." *U.S. v. Garcia,* 625 F.2d 162, 170 (7th Cir.1980).

The standard for adequate representation in this circuit is that the representation must meet minimum standards of professional competence. *U.S. ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir.1975); *cert. den.* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109; *Wade v. Franzen,* 678 F.2d 56 (7th Cir.1982); *U.S. v. Murzyn,* 631 F.2d 525 (7th Cir.1980).

I have reviewed the transcript of Rogers' state trial and of the hearing on his post-conviction motion. I find that the representation he received from Mr. Hanson met minimum standards of professional competence. In fact, Rogers received, in my opinion, representation that was very competent.

Before I discuss the one thing which Rogers claims Mr. Hanson should have done but did not do, I will review briefly what was done in Rogers' defense. Trial counsel called a Racine police officer to testify that Rogers was intoxicated the night of the murder. He called a police officer and the owner of the bar to testify as to the bullet hole in the ceiling tile, in an attempt to undermine the state's evidence regarding that shot. He hired a private investigator and called him to testify as to the angle of the bullet hole in the tile. He called a student from the University of Wisconsin-Parkside who had once been with Rogers and fired the murder weapon, to testify to their having changed the firing sequence of the gun so that the top barrel fired before the bottom one, thus undermining the state's first shot theory. He called a patrolman with the city of Racine Police Department who had test fired the murder weapon as to firing sequence. He called a former girlfriend of the victim to testify to a fight she had had in which Griffin pulled a gun on her. He called a city of Racine police officer to testify to an instance in which he had found Mr. Griffin in the possession of a .32 caliber revolver. In addition, Mr. Hanson, skillfully in my judgment, cross-examined the prosecution witnesses, including Dr. Schuster.

In contrast to what was done, what was not done was that counsel did not call a medical expert to state that if the first shot was the one which hit Griffin, he would have been immediately totally incapacitated. Rogers claims that it was an error of constitutional dimensions for trial counsel not to find such a witness.

At the hearing in state court on this issue, trial counsel testified that he had consulted with physicians in the Racine area and had not found anyone who would have testified that the shot would have immediately totally incapacitated Griffin. At that hearing Rogers presented the testimony and written report of Dr. Bauman, who testified at the hearing quite unequivocally that the wound would cause the "virtual, immediate, total incapacitation of the victim." Tr. of hearing, November 11, 1977, p. 17. However, his report also entered into evidence said that:

"... The victim would have been almost immediately incapacitated after receiving this wound and it would have been almost impossible for him to have engaged in an approximate two minute vigorous physical struggle...."

As a trial judge, I know what points a good prosecutor could make over the word *almost* in the report. In addition, the report contains the following disclaimer:

"I realize of course that one must be extremely cautious in making absolute statements regarding functional activity after sustaining cardiac wounds since there are apparently substantiated reports in medical literature that victims of such injuries have performed activities that appear incompatible with the injuries sustained."

In short, Dr. Bauman's testimony was not as persuasive as Rogers asserts. It must be placed in context with the testimony of the state's witnesses on which it would have to cast a "reasonable doubt." The state presented several eyewitnesses who testified that Rogers' pistol was pointed straight in the direction of Griffin when it was first fired. Rogers admitted on cross-examination that he intended to hit

Griffin with the first shot. Trial Tr., p. 332. In addition, the ballistics expert stated that the fatal shot was fired about four feet from the victim, a distance inconsistent with discharge of the pistol during a struggle. Griffin had gunpowder deposits on his right forehead, strongly suggesting that a bullet which missed him was discharged close to his body.

I am unconvinced that failing to call a doctor to state what Dr. Bauman stated at the hearing plus what he wrote in his report constitutes ineffective assistance of counsel. Rather than ineffective assistance of counsel, Rogers received conscientious, vigorous representation. His petition here for a writ of habeas corpus is, therefore, denied.

IT IS THEREFORE ORDERED that the petition for the issuance of a writ of habeas corpus is denied.

Dated at Milwaukee, Wisconsin, this 22 day of November, 1982.

BY THE COURT:

/s/ Terence T. Evans

TERENCE T. EVANS

UNITED STATES

DISTRICT JUDGE